CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 1 2 2017

JULIA C. DUDLEY, CLERK
BY: /s/
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 1:92CR00031 |
| v. | ) | |
| | ) | |
| EDDIE DEAN FLUKER, | ) | |
| | ) | By: Michael F. Urbanski |
| Petitioner. | ) | United States District Judge |

## MEMORANDUM OPINION

Petitioner Eddie Dean Fluker brings this habeas corpus petition pursuant to 28 U.S.C. § 2255, asking the court to vacate or correct his sentence in light of the United States Supreme Court's decisions in Johnson v. United States, 135 S. Ct. 2551 (2015), and Welch v. United States, 136 S. Ct. 1257 (2016). ECF Nos. 50, 57, and 78. The government moved to dismiss Fluker's § 2255 motion, ECF Nos. 67 and 81, and Fluker responded. ECF Nos. 68 and 82. For the reasons that follow, the court will **GRANT** Fluker's § 2255 petition and **DENY** the United States' motion to dismiss.[1]

### I.

On September 17, 1992, a criminal judgment[2] was entered sentencing Fluker to a term of 340 months of incarceration for possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1).[3] Because the court determined that Fluker had three or more qualifying convictions under the Armed Career Criminal Act (the "ACCA"), he was subject to 18 U.S.C. § 924(e)'s mandatory minimum sentence of 180 months, rather than the 120-month

---

[1] This case will be set down for resentencing.
[2] The original criminal judgment predates electronic docketing. For ease of reference, the Clerk has docketed the original judgment in this case as ECF No. 83.
[3] United States District Judge Samuel G. Wilson presided over Fluker's sentencing. Judge Wilson has since retired and the instant § 2255 motion was assigned to the undersigned United States District Judge.

maximum sentence otherwise authorized under § 924(a)(2). The court calculated the sentencing guideline range as 360 months to life. Fluker also was convicted of possession with the intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii), and sentenced to a concurrent term of 340 months. Finally, Fluker was convicted of carrying a firearm in relation to a drug trafficking crime, and sentenced to a consecutive term of 60 months. Fluker's total term of imprisonment was 400 months. The criminal judgment stated that

> [t]he Court finds that the defendant has a history of resisting arrest; that if his gun had not jammed, that the defendant would have shot the police officer involved in his arrest; and that the defendant was on parole for a violent felony (rape) at the time of the instant offense.

ECF No. 83, at 4.

The criminal judgment accepted the factual findings in the Presentence Investigation Report ("PSR"), which found Fluker to be subject to the enhanced penalty under § 924(e) based on convictions listed in PSR paragraphs 47, 48 and 51, consisting of 1977 and 1979 convictions for Georgia robbery and a 1984 conviction for Georgia rape. ECF No. 21. The criminal judgment reflects that the court overruled Fluker's objections to the presentence report. ECF No. 83, at 4. Fluker appealed his conviction, but his criminal judgment was affirmed on appeal. ECF No. 1, at 4.

On June 21, 1996, Fluker filed his first motion to vacate his sentence under 28 U.S.C. § 2255. On March 28, 1997, the court denied Fluker's § 2255 petition, but granted a motion for sentence reduction under 18 U.S.C. § 3582(c)(2), reducing Fluker's concurrent sentence

2

on his drug and felon in possession charges from 360 to 327 months, followed by the consecutive 60 month sentence on the § 924(c) charge.[4]

Fluker subsequently filed a motion for authorization to file a second or successive § 2255 petition, which the Fourth Circuit Court of Appeals granted on May 5, 2016. ECF No. 49. Fluker's § 2255 petition was filed in the district court the same day. ECF No. 50.

## II.

Under 28 U.S.C. § 2255, a federal inmate may move the sentencing court to vacate, set aside, or correct the prisoner's sentence. Courts may afford relief where "the sentence was imposed in violation of the Constitution or the laws of the United States." Id. § 2255(a). If the court determines the sentence was unlawfully imposed, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." Id. § 2255(b).

A convicted felon found guilty of possessing a firearm faces a maximum sentence of 120 months. 18 U.S.C. § 924(a)(2). However, the ACCA provides for a mandatory minimum sentence of 180 months when a defendant was previously convicted of at least three prior serious drug offenses or violent felonies. Id. § 924(e)(1). A violent felony is defined as:

> [A]ny crime punishable by imprisonment for a term exceeding one year . . . that –
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, ~~or otherwise involves conduct that presents a serious potential risk of physical injury to another. . . .~~

Id. § 924(e)(2)(B) (strikeout added).

---

[4] This amended judgment also predates electronic filing, and is referenced in the original docket sheet, ECF No. 1, at 5 (#27—Amended Judgment in a Criminal Case).

3

In 2015, the Supreme Court invalidated the language stricken above after finding it void for vagueness. Johnson v. United States, 135 S. Ct. 2551 (2015) ("Johnson II").[5] Though often parsed into three clauses—the force clause, the enumerated clause, and the residual clause—§ 924(e)(2)(B) is comprised of two numbered subsections. See Begay v. United States, 553 U.S. 137, 142-44 (2008). Specifically, the first subsection states:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

18 U.S.C. § 924(e)(2)(B)(i) ("Subsection (i)"). The second subsection states:

> (ii) is burglary, arson, or extortion, involves use of explosives, ~~or otherwise involves conduct that presents a serious potential risk of physical injury to another~~. . . .

18 U.S.C. § 924(e)(2)(B)(ii) ("Subsection (ii)"). Subsection (ii) lists several specific "enumerated offense" crimes—burglary, arson, extortion, and use of explosives—that amount to violent felonies. The residual clause of subsection (ii) goes on to encompass any crime that "otherwise involves conduct that presents a serious potential risk of injury."

Fluker's qualifying convictions, for Georgia robbery and rape, do not implicate the enumerated clause. Thus, the sole question in this case following Johnson II is whether violations of those Georgia statutes fall within § 924(e)(2)(B)(i)—the force clause of the ACCA.[6]

---

[5] The court refers to the 2015 Johnson decision as "Johnson II" to distinguish it from the Supreme Court's earlier decision in Johnson v. United States, 559 U.S. 133 (2010) ("Johnson I"), concerning the force clause of § 924(e).
[6] A substantial portion of the briefing in this case addressed the government's arguments that Fluker's claim is procedurally barred. Those arguments are now foreclosed by the Fourth Circuit's recent opinion in United States v. Winston, 850 F.3d 677 (4th Cir. 2017).

4

## III.

On the merits, the government argues that the Georgia robbery statute is divisible, allowing the court to consider the state court indictments against Fluker. When those indictments are considered, the government contends that it is clear that Fluker was charged with robbery by force, thus implicating the force clause of the ACCA.

In response, Fluker argues that physical force is not a necessary element of Georgia robbery, rendering the ACCA inapplicable. Fluker's argument has two components. First, Fluker argues that certain parts of the Georgia robbery statute, such as robbery "by sudden snatching," do not contain an element of physical force. Second, even as to those parts of the statute that contemplate the use of physical force, Georgia law requires proof of only slight force, encompassing conduct far below the ACCA's threshold of violent force. Johnson I, 559 U.S. at 140 ("We think it clear that in the context of a statutory definition of '*violent* felony,' the phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person.").

### A.

Fluker's latter argument has been adopted by the Fourth Circuit Court of Appeals in recent months in similar cases involving application of the force clause of the ACCA to the crime of robbery under North Carolina and Virginia law.

In United States v. Gardner, 823 F.3d 793, 802 (4th Cir. 2016), the court vacated petitioner's ACCA enhanced sentence, finding that his prior North Carolina robbery convictions did not satisfy the ACCA's rigorous physical force test. Employing the categorical approach, the court weighed the minimum culpable level of force necessary for a

5

North Carolina robbery violation with the level of physical force required to meet the ACCA under Johnson I. After examining North Carolina decisions, the court

> conclude[d] that the minimum conduct necessary to sustain a conviction for North Carolina common law robbery does not necessarily include the use, attempted use, or threatened use of "force capable of causing physical pain or injury to another person," as required by the force clause of the ACCA. Johnson [I], 559 U.S. at 140. Therefore, we hold that North Carolina common law robbery does not qualify categorically as a "violent felony" under the ACCA.

Gardner, 823 F.3d at 804 (parallel citation omitted).

In United States v. Winston, 850 F.3d 677 (4th Cir. 2017), the Fourth Circuit reached the same conclusion concerning Virginia common law robbery, again applying Johnson I.

> The Supreme Court's holding in Johnson I settled competing views of federal courts regarding the amount of force required to qualify as the use or threatened use of "physical force" under the ACCA's force clause. Indeed, after Johnson I, certain crimes that courts previously had determined were violent felonies no longer met the newly defined requirements of the force clause as felonies necessarily entailing the use of "violent force" capable of causing pain or injury.

Id. at 684. (citation omitted).

Applying the categorical approach, the Fourth Circuit then looked to state law to ascertain the "minimum conduct criminalized by state law, including any conduct giving rise to a realistic probability, not a theoretical possibility that a state would apply the law and uphold a conviction based on such conduct." Id. (citation and internal quotations omitted). As the court explained, "Virginia common law robbery can be committed by violence or by intimidation. Thus, if either means of committing this crime does not require the 'use, attempted use, or threatened use' of 'physical force,' then Virginia robbery does not

6

categorically match the force clause of the ACCA." Id. Looking to Virginia law, the Fourth Circuit determined that "Virginia common law robbery can be committed when a defendant uses only a 'slight' degree of force that need not harm a victim." Id. at 685. As such, "Virginia common law robbery appears to encompass a range of de minimis contact by a defendant." Id. The court concluded:

> Based on the above decisions from the appellate courts in Virginia, we conclude that the minimum conduct necessary to sustain a conviction for Virginia common law robbery does not necessarily include the use, attempted use, or threatened use of "violent force . . . capable of causing physical pain or injury to another person," under Johnson I. Accordingly, we hold that Winston's conviction for Virginia common law robbery does not qualify as a violent felony under the ACCA.

Id. (citation omitted)

**B.**

In both Gardner and Winston, the court employed the "categorical approach" in determining whether a previous conviction qualified as a violent felony under the ACCA. Such an approach considers "only the conviction itself and the elements of the offense, not the particular facts of the crime." Gardner, 823 F.3d at 802.

In Fluker's case, two of his three ACCA qualifying convictions were for Georgia robbery.[7] The Georgia statute in place at the time of Fluker's 1977 and 1979 convictions reads as follows:

> **26-1901. Robbery.** A person commits robbery when, with the intent to commit theft, he takes the property of another from the person or the immediate presence of another (a) by use of force; or (b) by intimidation, by the use of threat or coercion, or

---

[7] In a supplemental petition, Fluker recently sought to add a challenge to his Georgia rape conviction as an ACCA predicate. ECF No. 78. The court need not address this issue as consideration of Fluker's robbery convictions is dispositive.

7

> by placing such person in fear of immediate serious bodily
> injury to himself or to another; or (c) by sudden snatching. A
> person convicted of robbery shall be punished by imprisonment
> for not less than one nor more than 20 years.

Ga. Code Ann. § 26-1901 (1968).

In a narrow range of cases, when a crime is divisible, the court is permitted to employ the "modified categorical approach" to determine the basis of a defendant's conviction. See Descamps v. United States, 133 S. Ct. 2276, 2283-85 (2013). Gardner teaches that:

> A crime is divisible when it includes multiple "alternative elements" that create different versions of the crime, at least one of which would qualify under the federal definition and at least one of which would not.
>
> A crime is not divisible simply because it may be accomplished through alternative means, but only when alternative elements create distinct crimes. Alternative elements of a crime, as opposed to alternative means of committing a crime, are factual circumstances of the offense that the jury must find unanimously and beyond a reasonable doubt. Therefore, when determining the divisibility of a crime, we may consider how courts generally instruct juries with respect to that offense.

Gardner, 823 F.3d at 802 (citation and internal quotations omitted).

Following Gardner's lead, the court looks to Georgia jury instructions to assess divisibility. Section 2.60.10 of Georgia's Suggested Pattern Jury Instructions, Volume II, Criminal Cases, states:

> A person commits robbery when, with intent to commit theft, that person takes property of another from the person or the immediate presence of another (by use of force) (by intimidation) (by use of threat or coercion) (by placing such person in fear of immediate serious bodily injury to that person or to another) (by suddenly snatching).
>
> The essential elements of the offense that the State must prove beyond a reasonable doubt are that the taking was done

8

       1) with the purpose to commit theft,

       2) against the will of the person robbed, and

       3) by force, by intimidation, by the use of threat or coercion, by placing such person or another in fear of immediate serious bodily injury to himself/herself or another, or by sudden snatching.

O.C.G.A. § 16-8-40.

Thus, the jury need not agree unanimously that the felonious taking was committed by the use of force, by intimidation, or by sudden snatching, only that one of those means was employed. See Gardner, 823 F.3d at 802-03; Winston 850 F.3d at 683 n.5. As such, the court will apply the categorical approach.[8]

## C.

As in Gardner and Winston, the issue in this case turns on an assessment of the minimum conduct necessary for a violation of the state robbery statute. Section 2.60.20 of the Georgia Suggested Pattern Jury Instructions, Volume II: Criminal Cases, contains a definition of the level of force necessary for Georgia robbery. That instruction states:

---

[8] Despite this conclusion, the court is mindful of a decision by a Georgia federal court finding the Georgia robbery statute to be divisible. See Green v. United States, Nos. CV416-153, CR405-139, 2007 WL 819680 (S.D. Ga. Mar. 1, 2017) (Report and Recommendation). Regardless, even were the court to agree that the Georgia robbery statute is divisible, authorizing use of the modified categorical approach, the result would be the same. Under the modified categorical approach, the court is permitted to examine the charging documents for Fluker's underlying crimes to ascertain which of the divisible alternative elements Fluker was charged with committing. Fluker's 1977 indictment charged him with robbery by force and intimidation in that he "did unlawfully, with intent to commit theft, by force and by intimidation, and by placing [victim] in fear of receiving immediate serious bodily injury to herself," took $96.00 from her person and immediate presence. ECF No. 60-1, at 5. Fluker's 1979 indictment charged him and another with robbery by force in that they "did unlawfully, with intent to commit theft, by the use of force, and by striking and pushing [victim] with their hands and fists and by knocking him down," took $40.00 from his person and immediate presence. Id. at 6. Because both indictments charge Fluker with committing robbery by force, under either the categorical approach or modified categorical approach, the question the court must answer is whether the force required to commit robbery in Georgia rises to the level of "physical force" required to violate the ACCA as determined in Johnson I.

9

"'Force' means personal violence or that degree of force necessary to remove articles from the person or from the clothing of the person so as to create resistance, however slight." The instruction cites as its source Walker v. State, 171 S.E.2d 290 (Ga. 1969). In that case, the defendant asked his victim for change, "grabbed at him, struck his chest and tore the pocket from his shirt while removing the money (approximately $63) from his person, and . . . a struggle ensued which continued until the police arrived." Id. at 291. The Georgia Supreme Court found this evidence to be sufficient for a conviction, holding that "[f]orce, in the sense in which it is used in defining the offense of robbery, consists in personal violence or that degree of force that is necessary to remove articles so attached to the person or clothing as to create resistance, however slight." Id. (internal quotation marks omitted).

Force, characterized by personal violence, has long been the hallmark of robbery in Georgia. In Long v. State, 12 Ga. 293, 318 (1852) (citing 4 Blackstone Com. 242), the Georgia Supreme Court held:

> The criterion which distinguishes *robbery* from *larceny*, is the violence which precedes the taking. There can be no *robbery* without violence, and there can be no *larceny* with it. I do not, in this connection, limit violence to actual force, but mean violence, actual or constructive. It is violence that makes the former an offence of greater atrocity than the latter. *Qui vi rapuit, fur improbior esse videtur.*

In Henderson v. State, 70 S.E.2d 713, 714 (Ga. 1952), the court explained that "[f]orce implies actual personal violence, a struggle and a personal outrage. If there is any injury done to the person, or if there is any struggle to keep possession of the property before it is taken from him, there will be sufficient force or actual violence to constitute robbery."

Focusing on Georgia cases involving robbery by force, it is plain that such a crime may be committed through the exercise of force below the level of "physical force" required by Johnson I to satisfy the ACCA. For example, in Moran v. State, 53 S.E. 806 (Ga. 1906), the perpetrators, under the pretense of assisting the victim from one train car to another, "caught hold of each arm, forced his hand out of his pocket where he carried his pocketbook, took the pocketbook, and then jumped off the train." Id. at 806. The court found the evidence sufficient to satisfy the charge of robbery by force. "While, in the present case, there was no struggle, there was personal violence, and a personal outrage, within the meaning of the law." Id.

Two decisions of the Georgia Court of Appeals teach that grabbing a victim's arm is sufficient to sustain a conviction for robbery by force. In Merritt v. State, 228 S.E.2d 149 (Ga. Ct. App. 1976), the court summarized the evidence as follows:

> The evidence shows the victim was a 16-year-old high school student. The appellant accosted the victim on a sidewalk at a time when the only persons present were the appellant, the victim and the victim's school companion. When walking past, appellant seized the victim by the arm and stopped the victim's forward progress. Though appellant momentarily released the victim, he again grabbed the victim by the arm, turned the victim around and while holding the victim by the forearm unbuckled a wrist watch and took it without permission. The victim stated that he was both stunned and afraid that appellant might be armed. The victim did not actively resist.

Id. at 150. The court concluded:

> In this case there was more than a mere removal or snatching of a wrist watch. In addition there was sufficient force to stop a walking person and spin the victim to face the opposite direction. We believe the degree of force employed by the appellant was sufficient to characterize the act as robbery.

11

Id. Likewise, in Watson v. State, 448 S.E.2d 718 (Ga. Ct. App. 1994), defendant grabbed a drugstore cashier's left arm as she opened the cash register. The frightened cashier pulled her arm away and ran to the middle of the store as defendant took the money from the cash register and fled. Id. at 719. Rejecting defendant's argument on appeal that there was no robbery by force, the court stated:

> The evidence, viewed in favor of the verdict, shows that appellant did take the money out of the register before the cashier broke away from his grasp. Moreover, even if she had managed to escape his grasp before he actually removed any money from the register, such facts would not negate the finding of robbery by us of force, in violation of OCGA § 16-8-40(a).

Id. See also Dutton v. State, 406 S.E.2d 85 (Ga. Ct. App. 1991) (robbery by force upheld where defendant grabbed beer from a convenience store cooler and, when confronted by the cashier, knocked him aside and ran out of the store).

Georgia's appellate courts have made it clear that the minimum level of force necessary for a state conviction of robbery by force is less than that required by Johnson I for an ACCA violation. In sum, the level of force required for a Georgia robbery conviction falls short of Johnson I's definition of physical force as set forth in § 924(e)(2)(B)(i). Johnson I, 559 U.S. at 140 ("We think it clear that in the context of a statutory definition of '*violent* felony,' the phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person."). Frankly, in this regard, the court cannot discern any material difference between the Georgia cases and those decided under either North Carolina or Virginia law. As such, an examination of Georgia law in light of the Fourth

...

Circuit's opinions in Gardner and Winston compels the court to conclude that Georgia robbery does not qualify categorically as a violent felony under the ACCA.[9]

### IV.

Following the holding in Johnson I, Fluker's two convictions for Georgia robbery are not violent felonies within the meaning of the ACCA. Because Welch declared Johnson II retroactively applicable to cases on collateral review, Fluker has the procedural means to attack his ACCA conviction, even at this late date.[10] See Winston, 850 F.3d at 681-82. Accordingly, Fluker's § 2255 motion is **GRANTED**, and the government's motion to dismiss **DENIED**.

An appropriate Order will be entered setting the case down for resentencing.[11]

Entered: 05-12-2017

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge

---

[9] Because the court concludes that Georgia robbery committed by force does not require the use, attempted use, or threatened use of "physical force" within the meaning of the ACCA, the court need not consider whether robbery committed by intimidation or sudden snatching would require the use, attempted use, or threatened use of "physical force." See Gardner, 823 F.3d at 804 n.6; Winston, 850 F.3d at 685 n.7.

[10] Fluker was sentenced concurrently on Count 3, which implicates the ACCA, and Count 1, which was a drug possession with intent to distribute charge that did not involve enhancement under § 924(e). ECF No. 83. In addition, Fluker was sentenced to a consecutive term of 60 months on Count 2, which also did not involve the ACCA. Id. Nonetheless, the court, exercising its "broad and flexible" powers under § 2255, will utilize "the most 'appropriate' remedy" and conduct resentencing on all counts. United States v. Hillary, 106 F.3d 1170, 1171–72 (4th Cir. 1997); see United States v. Davis, 112 F.3d 118, 120–23 (3d Cir. 1997) ("Based on the facts of this case, in which the petitioner collaterally attacks only one of his multiple convictions, which are interdependent for sentencing purposes, we find that the district court did not err in asserting jurisdiction to recalculate the aggregate sentence.").

[11] In order to facilitate resentencing, the United States Probation Office is directed to prepare an updated PSR, including information regarding Fluker's institutional history while in the Bureau of Prisons. Fluker has consented to his resentencing hearing being conducted by videoconference. ECF No. 58-2. The Clerk is directed to arrange a resentencing hearing by videoconference once Probation has prepared and circulated the updated PSR.

13